IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED
SEP 2 2 2010
CLIFFORD J. PROUD
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NUMBER 10-M-6177-CJP |
| ) | |
| ROMAN OTTO CONAWAY, ) | |
| ) | |
| Defendant. ) | |

## CRIMINAL COMPLAINT

I, Richard T. Box, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

### COUNT 1
### MAKING FALSE THREATS TO DETONATE AN EXPLOSIVE DEVICE

On or about September 21, 2010, in Saint Clair County, within the Southern District of Illinois,

**ROMAN OTTO CONAWAY,**

defendant herein, did intentionally convey false and misleading information, under circumstances where such information may reasonably have been believed, that indicated that an activity would take place, that would constitute a violation of 18 U.S.C. § 844(h)(1), in that the Defendant attached two bricks of an inert putty-like material designed and formed to replicate blocks of C-4 explosive to wires connected to a homemade detonation device and falsely represented that the inert material was an actual explosive device and the Defendant threatened to detonate that explosive device and kill Special Agent Jonathan Kelly during the performance of his official duties, in violation of 18 U.S.C. § 1114.

All in violation of Section 1038(a)(1) of Title 18 of the United States Code.

## COUNT 2
### MAKING A THREAT AGAINST THE PRESIDENT

On or about September 21, 2010, in Saint Clair County, within the Southern District of Illinois,

**ROMAN OTTO CONAWAY,**

defendant herein, did knowingly and willfully make a threat to take the life of the President of the United States, in that the defendant placed a telephone call from his residence located in Fairview Heights, Illinois, to INDIVIDUAL A, and threatened that he was going to kill President Obama.

All in violation of Section 871(a) of Title 18 of the United States Code.

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

1. I, Richard T. Box, am a Special Agent of the Federal Bureau of Investigation, and have been so employed since January, 2004. I am currently assigned to the Fairview Heights, Illinois, Resident Agency. My primary duties include matters of domestic terrorism. I have received specialized training in counterterrorism, weapons of mass destruction, and I have 5 ½ years' experience working cases that involve bombings.

2. On September 21, 2010, the FBI was contacted by INDIVIDUAL A, who is associated with a St. Louis area mosque. INDIVIDUAL A advised that he had received a threatening telephone call from a man who identified himself as "Roman," who stated the following:

- I am letting you know, that, tonight I am going to burn a copy of the Quran
- I am going to make a video of this burning and distribute it to 3 TV channels

- I want to start a war between the Christians and Muslims
- I am also going to kill President Obama and other government officials to start a war.
- I want to start an Apocalypse.
- I want to end the war in Afghanistan which f....ing Bush started.
- The reason Terry Jones did not burn the Quran, was because Obama threatened him.
- I want Kim Jong IL to have some pain and cry

During the conversation, the caller repeated his threat to burn the Quran and to kill the President. INDIVIDUAL A provided the FBI with the telephone number for the caller from INDIVIDUAL A's caller ID.

3. Based upon the nature of the threats to the President, the FBI coordinated with the United States Secret Service. Agents determined that the telephone number referenced by INDIVIDUAL A was connected to **ROMAN OTTO CONAWAY**'s address in Fairview Heights, Illinois. At approximately 6:00 PM three agents from the FBI and the USSS went to **ROMAN OTTO CONAWAY**'s home to investigate the threats.

4. When agents arrived, they parked their vehicles in the street and began walking towards the address, where they observed the front door to be open. **ROMAN OTTO CONAWAY** saw the agents approaching in the street, and he slammed the door shut demanding the officers leave the premises. The agents waited in the street for approximately 10-15 seconds at which time **ROMAN OTTO CONAWAY** exited the residence along with his son and his wife. **ROMAN OTTO CONAWAY** displayed a wide mesh support belt with what appeared to be explosives affixed to the belt, which had wires leading from the belt to a curling iron. **ROMAN OTTO CONAWAY** stated that the device was an explosive device and he threatened to detonate the device.

5. Agents retreated to a safe distance and called for additional law enforcement assistance. Agents maintained constant communication with **ROMAN OTTO CONAWAY** at

3

all times subsequent to the initial contact. Agents repeatedly attempted to convince **ROMAN OTTO CONAWAY** to relinquish his device and to surrender, but he refused. During the standoff, **ROMAN OTTO CONAWAY** repeatedly stated that the device attached to his body was an actual explosive device. Further, he stated that the wires connected to his detonation device were also connected to two 55 gallon metal drums located in the front yard and a third container located behind the residence, which all contained combustible chemicals. Agents were able to observe wiring in the yard that appeared consistent with the threats. **ROMAN OTTO CONAWAY** also stated that he had military experience as an "Army EOD." An "EOD" refers to Explosive Ordnance Disposal, which is a military position specializing in explosive devices. **ROMAN OTTO CONAWAY** repeatedly threatened to kill himself, to blow up neighboring houses, and to blow up and kill the agents who were negotiating with him, including FBI Special Agent Jonathan Kelly. **ROMAN OTTO CONAWAY** eventually agreed to allow his son and his wife to leave the residence; and he requested that upon his surrender that he be transported to a hospital for a mental evaluation in lieu of incarceration in the St. Clair County Jail. The agents agreed to his request and made arrangements for his transportation to a secure medical facility. The standoff persisted until **ROMAN OTTO CONAWAY** ultimately surrendered at approximately 2:10 AM, on September 22, 2010.

      6. After being taken into custody, **ROMAN OTTO CONAWAY** was provided with his *Miranda* rights and he was interviewed. During his interview, **ROMAN OTTO CONAWAY** admitted that he placed a telephone call to INDIVIDUAL A, and he admitted making a number of the statements reported by INDIVIDUAL A; however, **ROMAN OTTO CONAWAY** denied that he threatened to kill the President. **ROMAN OTTO CONAWAY** also admitted that he knew that he falsely threatened to use an explosive device, and provided

explanations of his personal reasons for doing so. Included in his explanation for why he committed these offenses was the fact that he is "anti-government," and that on September 21, 2010, a St. Clair Circuit Court had issued an order of protection against him that precluded contact with his grandchildren. **ROMAN OTTO CONAWAY** also freely admitted that he wished to burn the Quran and stated that he wanted to do so in order to incite conflict with Muslims. **ROMAN OTTO CONAWAY** admitted that he "threatened to kill the cops today because he didn't care if he would die."

7. **ROMAN OTTO CONAWAY** also admitted that "I made my wife and son stick around, because I needed them to shield me. They didn't know what was going on until I put on the belt."

8. After obtaining written consent from his wife, agents searched **ROMAN OTTO CONAWAY**'s residence in Fairview Heights, Illinois. Agents recovered multiple items of evidence including: a mesh belt with bricks of an inert putty-like substance that was designed and formed to replicate blocks of C-4 explosive to wires connected to a homemade detonation device made from a curling iron. **ROMAN OTTO CONAWAY** stated that it took him approximately two hours to create the fake bomb, and that "I humbly apologize for my actions." Agents also located a new Quran that had been placed on a barbeque grill above sticks and twigs next to a gasoline can and matches.

FURTHER AFFIANT SAYETH NAUGHT.

_____
**RICHARD T. BOX**
FEDERAL BUREAU OF INVESTIGATION

State of Illinois         )
                          )   SS.
                          )
County of St. Clair

Sworn to before me and subscribed in my presence on the 22nd day of SEPTEMBER, 2010, at East St. Louis, Illinois.

HONORABLE CLIFFORD J. PROUD
United States Magistrate Judge

STEPHEN R. WIGGINTON
United States Attorney

STEVEN D. WEINHOEFT
Assistant United States Attorney